# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF IDAHO

| | |
|---|---|
| **In Re:** <br><br> **KARA D. ANDRUS,** <br><br><br>           **Debtor.** | **Bankruptcy Case** <br> **No. 20-40819-JMM** |

## MEMORANDUM OF DECISION

**Appearances:**

Kameron M. Youngblood, Idaho Falls, Idaho, former attorney for debtor.

Andrew S. Jorgensen and Jason R. Naess, Boise, Idaho, attorney for the United States Trustee.

Heidi Buck Morrison, Pocatello, Idaho, attorney for trustees Gary Rainsdon and Sam Hopkins.

### *Introduction*

Debtor Kara D. Andrus ("Debtor") filed a chapter 7[1] bankruptcy petition on

October 20, 2020.  Doc. No. 1.[2]  In doing so, she was represented by attorney Kameron

---

[1] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, all "Rule" references are to the Federal Rules of Bankruptcy Procedure, Rules 1001-9037.

[2] The docket in this case was not made a part of the Court's record.  Nevertheless, the Court may take judicial notice of its own docket and will do so in this case.  *In re Parkinson Seed Farm, Inc.*, ___ B.R. ___, No. AP 20-08039-JMM, 2022 WL 532731, at *1 (Bankr. D. Idaho Feb. 18, 2022) (citing *Hillen v. Specialized Loan Servicing, LLC (In re Leatham)*, 2017 WL 3704512, *2 (Bankr. D. Idaho Aug. 24, 2017)) ("Pursuant to Federal Rule of Evidence 201, this Court, on its own, can take judicial notice of information that is generally known within its jurisdiction or can accurately be determined from sources whose accuracy cannot be reasonably be questioned. That includes taking notice of its own docket in the

MEMORANDUM OF DECISION — 1

M. Youngblood ("Youngblood"). Upon finding a number of concerning issues with how

Youngblood was handling his cases, the United States Trustee ("UST") filed a motion for

sanctions in this and over 50 other cases, of which 44 were assigned to this Court. Doc.

No. 41. The Court conducted a hearing on the motions on November 18, 2021, after

which it permitted supplemental briefing. Following the briefing, the motions were

deemed under advisement.

After considering the record, submissions, and arguments of the parties, as well as

applicable law, this decision resolves the motion. Fed. R. Bankr. P. 7052; 9014.

### The Sanctions Motion

In the motion in this case, the UST alleges three specific areas of sanctionable

conduct: 1) the Rule 2016(b) disclosure was misleading; 2) the fees charged to Debtor

were unreasonable; and 3) the agreement between Youngblood and Debtor created

conflicts of interest. Additionally, with regard to the sanctions motions filed in each of

the separate cases, when considered as a whole, the UST alleges a pattern and practice of

violations under § 526. As a result, the UST seeks the following monetary and non-

monetary remedies:

1. Cancelling or voiding any contract or agreement between the Debtor and
   Youngblood under § 329;

2. Disgorging the fees Debtor paid to Youngblood under § 329;

3. Injunctive relief under § 526(c)(5) and the Court's inherent powers, specifically:
   a. Suspending Youngblood's practice in front of the Court until the Court is
      satisfied the concerns identified have been corrected;
   b. If Youngblood is allowed to practice in front of the Court again, requiring

---

underlying case.")

MEMORANDUM OF DECISION — 2

him to file a "status report" signed by the client and Youngblood in each
case where he appears as counsel, attesting that:

    i. Youngblood personally met and reviewed the Petition, Schedules,
Statement of Financial Affairs, and other documents with the client
prior to filing;

    ii. The client's questions have been answered regarding the Petition,
Schedules, Statement of Financial Affairs, and other documents, and
the information included therein, and the client is satisfied he or she
is receiving adequate representation from Youngblood; and

    iii. The client provided Youngblood a copy of the wet signatures for the
Petition, Schedules, SOFA, and other documents filed in the case.
The requirement to file such a report should continue until the Court
is satisfied it is no longer necessary.

4. Imposing a civil penalty under § 526(c)(5)(B) against Youngblood to deter him
from making untrue and misleading statements and misrepresentations in the
future, as a result of his intentional violations, and pattern and practice of
violating, §§ 526(a)(1), (a)(2), and (a)(3).

Doc. No. 41. The Court will discuss each of the allegations and sanctions sought.

### *Applicable Law, Analysis, and Disposition*

1. Rule 2016(b) Disclosure

    *A. Applicable Law and Facts*

Section 329 of the Code requires an attorney to disclose the amount of all

compensation "paid or agreed to be paid, if such payment or agreement was made after

one year before the date of the filing of the petition, for services rendered or to be

rendered in contemplation of or in connection with the case…." This disclosure

requirement is implemented by Rule 2016(b), which requires:

> Every attorney for a debtor, whether or not the attorney applies for
> compensation, shall file and transmit to the United States trustee within 14
> days after the order for relief, or at another time as the court may direct, the
> statement required by § 329 of the Code including whether the attorney has
> shared or agreed to share the compensation with any other entity…. A
> supplemental statement shall be filed and transmitted to the United States

MEMORANDUM OF DECISION — 3

trustee within 14 days after any payment or agreement not previously
disclosed.

In this case, Youngblood filed a disclosure of compensation contemporaneous

with the petition on October 20, 2020 ("Disclosure").  Ex. 344.  The Disclosure indicates

that Debtor paid Youngblood nothing prior to the bankruptcy filing, but that the agreed

fee was $1,910 "for services rendered or to be rendered on behalf of the debtor(s) in

contemplation of or in connection with the bankruptcy case …."  *Id.*  It further provides

in paragraph 5:

> In return for the above-disclosed fee, I have agreed to render legal service
> for all  aspects of the bankruptcy case, including:

> a.  Analysis of the debtor's financial situation, and rendering advice to the
>     debtor in determining whether to file a petition in bankruptcy;
> b.  Preparation and filing of any petition, schedules, statement of affairs
>     and plan which may be required;
> c.  Representation of the debtor at the meeting of creditors and
>     confirmation hearing, and any adjourned hearings thereof;
> d.  [Left open for additional provisions; none were listed].

*Id.*  The Disclosure also provided details about the financial agreement between Debtor

and Youngblood:

> e.  Counsel has a line of credit from a third-party lender secured by the
>     assignment to the lender of the account receivable owed by Debtor(s).
>     The financing is not factoring and also should not be considered an
>     agreement to share compensation.  The Lender will have rights to
>     collect payment from the Debtor(s) as well as any Guarantor.  Such
>     financing clearly provides that Debtor(s) are fully informed, must and
>     agree to the financing and assignment.  Debtor(s) understand that the
>     actual loan agreements may be available upon request by a party-in-
>     interest.
> f.  Debtor and Attorney have entered into two separate fee agreements.
>     The first was for $0.00 fees, but may have included costs, signed pre-
>     petition, for the preparation and filing of the bankruptcy petition,
>     review, analysis and advisement of the typical matters that are required

MEMORANDUM OF DECISION — 4

to be performed pre-petition by a bankruptcy attorney under the applicable bankruptcy and ethical rules.  Any fees and costs for pre-petition services unpaid at the time of filing are waived.  The second fee agreement was for $1,910, signed post-petition for the completion of the balance of the schedules, representation at the 341 meeting of creditors, and the legal services outlined in the fee agreement.  The post-petition agreement allows the Debtor(s) to make payments for up to 12 months post-petition.  Counsel's services to the Debtor(s) are not unbundled.  Instead, they are bifurcated into pre-petition services and post-petition.  See [two cited cases], and related cases.  Counsel is able to draw funds under its line of credit in an amount up to 75% of the post-petition fees so long as it assigns the post-petition receivable to the lender as collateral for payment, in which event in which event [sic] the lender will manage the account receivable in accordance with the terms of the line of credit agreement.

*Id.*

Finally, in paragraph 7, Youngblood explains the fee options available to Debtor, as follows:

Counsel offered debtor(s) two options for the payment of counsel's fees: (1) pre-pay the fees in full prior to the Chapter 7 bankruptcy petition being filed, or (2) bifurcate the attorney services into pre- and post-petition work in order to facilitate the debtor(s) obtaining the benefit of being filed right away and making payments post-petition for post-petition work.  Counsel charges a higher fee for the second option.  There are a number of reasons for charging a higher fee:

    a.  Counsel performs additional work to split the engagement;

    b.  Counsel takes on risk by allowing the debtor to pay the attorney fee over time instead of collecting the entire fee up front;

    c.  The option provides the debtor(s) with the benefit of a quicker filing than if the debtor(s) had to come up with the money to pay in advance;

    d.  The option gives debtor(s) an opportunity to begin rebuilding their credit score by making timely payments toward the attorney fee;

    e.  Counsel will not charge the debtor additional fees for certain services that if required would otherwise cost the debtor(s) more if debtor(s) had paid the entire fee before the case was filed; and

    f.  FSF (described below) charges a fee to Counsel for its financing, payment management, credit reporting and other services provided

MEMORANDUM OF DECISION — 5

to Counsel, for which FSF charges a fee equal to [remainder of paragraph is cut off].

*Id.*

The text of Youngblood's Disclosure is plainly misleading and inconsistent. First, paragraph 5 provides that for the $1,910 fee, Youngblood will perform both pre- and post-petition services. Those include analyzing Debtor's financial situation and assistance in determining whether a bankruptcy petition ought to be filed and preparation of the petition, which are clearly pre-petition services. But for the same fee, Youngblood also agrees to represent Debtor at the meeting of creditors, which clearly occurs post-petition.

In subparagraph 5(f), however, Youngblood inconsistently discloses that he and Debtor entered into two separate fee agreements, with the first covering pre-petition services such as the preparation and filing of the bankruptcy petition, for which any unpaid amount of those fees and costs were "waived," and the second alleged fee agreement covers everything else in the case that is not otherwise excluded. *Id.* As such, it is unclear whether Youngblood charged Debtor anything for pre-petition services—on one hand, the Disclosure indicates the $1,910 fee covers both pre- and post-petition services, while a separate subparagraph suggests Youngblood did all pre-petition work for free. This inconsistency renders the Disclosure misleading.

*B. Analysis and Disposition*

The UST seeks to void or cancel the contract of employment between Youngblood and Debtor pursuant to § 329. As noted above, that section requires an attorney to

MEMORANDUM OF DECISION — 6

disclose the compensation paid or to be paid in connection with the bankruptcy case, the

disclosure of which is made by the attorney under Rule 2016.

   Section 329(b) provides that if the compensation paid to a debtor's counsel

exceeds the reasonable value for the services provided, "the court may cancel any such

agreement, or order the return of any such payment, to the extent excessive…."  Courts

interpreting this provision have looked beyond the quantity of fees charged and used it to

redress other issues with the attorney client relationship.  *See e.g., In re Grimmett,* No.

BR 16-01094-JDP, 2017 WL 2437231 (Bankr. D. Idaho Jun. 5, 2017), *aff'd* No. 1:17-cv-

00266-EJL (D. Idaho Feb. 16, 2018) (fees deemed excessive because fee agreement and

collection measures created conflict of interest); *Hale v. United States Trustee (In re*

*Basham),* 208 B.R. 926, 932 (9th Cir. BAP 1997) (the record "supports the bankruptcy

court's finding that the fees were unreasonable given the … failure to provide competent

and complete representation of the [debtors]); *In re Martin*, 197 B.R. 120, 126 (Bankr. D.

Colo. 1996) ("The compensation to be paid to an attorney can be deemed excessive for a

host of reasons, including but not limited to an attorney's failure to perform agreed upon

services, failure to comply with the disclosure requirements, the existence of conflicts of

interest, and the like.").[3]

---

[3] Finally, although not at issue here, it is questionable whether the Disclosure filed with the Court would pass muster under either *In re Castorena,* 270 B.R. 504 (Bankr. D. Idaho 2001) or *In re Grimmett*, 2017 WL 2437231, at *9.  An Idaho bankruptcy court in *In re Castorena* prohibited the practice of "unbundling" legal services, holding that when an attorney agrees to represent a client in a bankruptcy case, that attorney agrees to provide a number of fundamental services such as filing schedules, appearing at the § 341 meeting of creditors, and other services.  270 B.R. at 530. The *Grimmett* court reaffirmed that holding.  2017 WL 2437231, at *6–7.

MEMORANDUM OF DECISION — 7

There is no question that the Disclosure is internally inconsistent. This confusion places Debtor at risk due to a lack of clarity about what services she could expect Youngblood to perform for the agreed upon sum. In this case, the Court finds that cancelation of the contract between Youngblood and Debtor is warranted.

The Court now turns to the issue of disgorgement. The Bankruptcy Code's disclosure requirements are mandatory, and courts have held that an attorney who fails to comply with those requirements forfeits any right to receive compensation. *Hale*, 208 B.R. at 930–31 (citing *Peugeot v. United States Trustee (In re Crayton),* 192 B.R. 970, 981 (9th Cir. BAP 1996)). Once the bankruptcy court determines that an attorney has violated § 329 and Rule 2016, the bankruptcy court has the authority to order the attorney to disgorge all of the attorney's fees. *Hale,* 208 B.R. at 931; *In re Blackburn*, 448 B.R. 28, 43 (Bankr. D. Idaho 2011) ("The state of the law is clear—an attorney who neglects to meet the disclosure requirements of § 329(a) and Rule 2016(b), even if inadvertently, forfeits the right to receive compensation for services rendered and may be ordered to return fees already received."). Indeed, the Tenth Circuit has held that "full disgorgement is [not] always appropriate for failure to disclose under § 329[,] [b]ut it should be the default sanction, and there must be sound reasons for anything less." *SE Prop. Holdings, LLC v. Steward (In re Stewart)*, 970 F.3d 1255, 1267 (10th Cir. 2020). The Ninth Circuit has held that even a negligent or inadvertent failure to fully disclose relevant information under Rule 2016 may result in denial of requested fees. *Neben & Starrett, Inc. v. Chartwell Fin. Corp. (In re Park–Helena Corp.),* 63 F.3d 877, 882 (9th Cir. 1995). Finally, the caselaw is clear that filing an inaccurate disclosure statement "is appropriate

MEMORANDUM OF DECISION — 8

basis for the total disallowance of compensation by counsel.") *Grimmett*, 2017 WL

2437231 at *10; *see also Hale,* 208 B.R. at 931; *Law Offices of Nicholas A. Franke v.*

*Tiffany (In re Lewis)*, 113 F.3d 1040, 1045–46 (9th Cir. 1997); *Park–Helena Corp.*, 63

F.3d at 881–82.  Here, Youngblood's Disclosure was inconsistent and unclear, and

provides grounds for disgorgement of the entire $1,910 fee paid to him in this case.

While the case law is clear that disgorgement of the entire fee paid to Youngblood

is appropriate, the Court will give credit where credit is due.  In this case, the petition and

schedules were successfully filed and on January 21, 2021, Debtor received a discharge.

Doc. No. 28.  To reach this point, certain expenses were necessarily incurred, including

payment of the filing fee of $335 as well as those associated with obtaining certificates of

credit counseling.  While it is unclear whether the funds to pay for these expenses were

separately provided by Debtor or were paid from funds described in the Disclosure filed

in the case, the Court's docket reflects that Youngblood electronically paid the filing fee,

as there is no notation of a check number, leading the Court to conclude that the filing fee

was paid from the funds Debtor agreed to pay Youngblood according to the Disclosure.

Doc. No. 9.  Because the Court is respectful of the fact that there are costs associated with

the filing of a bankruptcy petition, the Court will allot $400 to cover these expenses.

Accordingly, the Court will order that Youngblood disgorge the entirety of the fees paid

in this case, minus $400, for a total disgorgement of $1,510.

## 3.  Conflicts of Interest

The UST next alleges that the language in the Disclosure filed in Debtor's case

creates a conflict of interest prohibited by the Idaho Rules of Professional Conduct.

MEMORANDUM OF DECISION — 9

Specifically, the disclosures filed in Debtor's case provide that "Counsel has a line

of credit from a third-party lender secured by the assignment of the account receivable

owed by Debtor(s)," and that the lender will have the right to collect payment from the

Debtor.  Ex. 344.  It further provides that Youngblood may "draw funds under its line of

credit in an amount up to 75% of the post-petition fees so long as it assigns the post-

petition receivable to the lender as collateral for payment, in which event the lender []

will manage the account receivable in accordance with the terms of the line of credit

agreement."  *Id.*  This arrangement enables Youngblood to draw from this line of credit

only if he assigns the receivable—the balance of the fees owed by Debtor—to the lender.

In this way, Youngblood is having Debtor pay his fees under an installment contract.

Indeed, the Disclosure actually uses the word "loan" when it provides that the "actual

loan agreements may be available upon request by a party-in-interest."  *Id.*

The Court finds this problematic.  As the UST points out, this arrangement

violates the Idaho Rules of Professional Conduct.  Those rules apply to attorneys

practicing before this Court.  Local Bankruptcy Rule 9010.1(g) provides that the

"members of the bar of this court shall adhere to the Rules of Professional Conduct

promulgated and adopted by the Supreme Court of the State of Idaho.").  *Grimmett*, 2017

WL 2437231 at *5.

Pertinent here, Idaho Rule of Professional Conduct 1.7 governs conflicts of

interest and provides that a lawyer shall not represent a client if "there is a significant risk

that the representation of one or more clients will be materially limited by … the personal

interests of the lawyer…."  Idaho Rule of Professional Conduct 1.7(a).  Such conflicts

MEMORANDUM OF DECISION — 10

may be overcome if, *inter alia*, the client gives informed consent, confirmed in writing. Idaho Rule of Professional Conduct 1.7(b). The arrangement established in the Disclosure is essentially an installment payment plan, with the payments being assigned to a third-party for collection, giving Youngblood access to a line of credit.

It is patently clear, however, that Debtor cannot afford to make payments. The schedule J filed in her case, which illustrates her expenses as well as her monthly net income, plainly shows that her expenses exceed her income by $1,465.57 each month. Ex. 343. As such, this payment arrangement puts Debtor at financial risk. From the face of the documents in the Court's docket, it appears that Youngblood signed Debtor up for a plan that was financially harmful to her but beneficial to Youngblood. This is a conflict of interest and violates Idaho Rule of Professional Conduct 1.7(a).

4.  Reasonableness of Bifurcated Fees

The Court will next take up the UST's assertion that the bifurcated fees paid in this case were unreasonable. The UST argues that because the Disclosure provides that Youngblood is charging nothing, or in the verbiage of the Disclosure, he "waives" the fees for pre-petition services, then his post-petition services are therefore worth $1,910. The UST contrasts this figure with those cases where the fee is not bifurcated—where the debtor pays in cash up front. The UST's theory is that if Youngblood's post-petition services are worth $1,910, then a cash deal should be for more money, as the debtor is also paying Youngblood for his pre-petition work. To prove this point, in the body of the sanctions motion, the UST considered all of Youngblood's open chapter 7 cases where the payment was made in cash and averaged the total fee charged. The UST then did the

MEMORANDUM OF DECISION — 11

same with the bifurcated cases, but first subtracted the 25% fee that the company

providing the line of credit charges Youngblood for this service, and then averaged the

remaining fee amounts.  The UST found that the cash payment fee was only $18.71 more

than that charged in the bifurcated cases.  From this the UST concluded that either

Youngblood's pre-petition work was only worth $18.71 on average, which is implausible,

or that the bifurcated fees were unreasonable.

The Court cannot reach the same conclusion on the evidence presented.  Whether

fees charged are reasonable is specific to each individual debtor's case and cannot be

based on the law of averages.  Each case is different, and what is a reasonable fee to

charge one debtor may not be so for the next.  Moreover, the Court cannot say that it is

per se unreasonable for an attorney to offer a discount to clients who pay in cash.  Law

offices have overhead expenses and require a certain cash flow to sustain operations.  As

such, cash in hand is more valuable than cash over time.  The fact that a cash discount is

offered does not render the bifurcated fee unreasonable.  Accordingly, the UST's motion

for sanctions due to the unreasonableness of the fee charged will be denied.

5.  Sanctions

As noted above, because of the inconsistencies and confusion in the Disclosure

filed in this case, cancellation of the attorney/client contract between Debtor and

Youngblood and disgorgement of Youngblood's fee in the amount of $1,510 in this case

is warranted.

In addition to those sanctions, the UST seeks injunctive relief as well as a civil

penalty.  The Court concludes that injunctive relief under both § 526 and its inherent

MEMORANDUM OF DECISION — 12

powers is appropriate here.

   A.  *"Pattern and Practice" of Violations Under § 526*

   Section 526 of the Code provides restrictions on "debt relief agencies."  It

provides, in pertinent part:

   (a) A debt relief agency shall not--
      (1) fail to perform any service that such agency informed an assisted
      person or prospective assisted person it would provide in connection
      with a case or proceeding under this title;
      (2) make any statement, or counsel or advise any assisted person or
      prospective assisted person to make a statement in a document filed
      in a case or proceeding under this title, that is untrue or misleading,
      or that upon the exercise of reasonable care, should have been
      known by such agency to be untrue or misleading;
      (3) misrepresent to any assisted person or prospective assisted
      person, directly or indirectly, affirmatively or by material omission,
      with respect to—
         (A) the services that such agency will provide to such person;
         or
         (B) the benefits and risks that may result if such person
         becomes a debtor in a case under this title;

   * * * * *

   (c)(5) Notwithstanding any other provision of Federal law and in addition
   to any other remedy provided under Federal or State law, if the court, on its
   own motion or on the motion of the United States trustee or the debtor,
   finds that a person intentionally violated this section, or engaged in a clear
   and consistent pattern or practice of violating this section, the court may--
         (A) enjoin the violation of such section; or
         (B) impose an appropriate civil penalty against such person.

   A bankruptcy attorney is a debt relief agency.  *See* § 101(12A) (defining

"debt relief agency" as "any person who provides any bankruptcy assistance to an

assisted person in return for the payment of money or other valuable consideration");

*Milavetz, Gallop & Milavetz, P.A. v. United States*, 559 U.S. 229, 232, 130 S. Ct. 1324,

MEMORANDUM OF DECISION — 13

1329, 176 L. Ed. 2d 79 (2010) (holding that a bankruptcy attorney falls within the

definition of a "debt relief agency.")  The Code also defines "assisted person" as "any

person whose debts consist primarily of consumer debts and the value of whose

nonexempt property is less than $204,425.[4]  Youngblood qualifies as a debt relief agency

for each of the cases before this Court in which the sanctions motion was filed, as each of

the debtors checked the box indicating his or her debts consisted of primarily consumer

debts, and the value of their nonexempt property was less than $204,425.

As the statute above indicates, if a debt relief agency represents to an assisted

person that it will provide certain services in connection with a bankruptcy case, and then

fails to perform those services, the debt relief agency has violated § 526(a)(1).  Moreover,

§ 526(a)(2) is violated if a debt relief agency makes, or counsels or advises any assisted

person to make, a statement in a document that is filed with the court, that is untrue or

misleading, or using reasonable care should have been known to be untrue or misleading.

Finally, if a debt relief agency misrepresents the services that it will provide to an assisted

person or the benefits and risks that may result if such person files a bankruptcy petition,

then § 526(a)(3) may have been violated.

Moreover, if the violations of § 526 are determined to be intentional, or if a clear

and consistent pattern or practice of violating § 526 is found, the statute permits the court

to enjoin the violation and impose a civil penalty against the attorney.  § 526(c)(5).  The

---

[4] This figure was originally $150,000, and was adjusted to $204,425 effective April 1, 2019.  The amount increased recently to $226,850, effective April 1, 2022.  All cases at issue here were filed when the amount was $204,425.

MEMORANDUM OF DECISION — 14

UST argues that it has demonstrated a pattern and practice of violations of § 526 and has asked for both an injunction and the imposition of a civil penalty in this case.

The Court finds that a clear and consistent pattern and practice of violating § 526 has been demonstrated.  Recall, if Youngblood, as a debt relief agency, made an untrue or misleading statement in a document that is filed with the court, § 526(a)(2) has been violated.  Moreover, if Youngblood, as a debt relief agency, failed to perform any service that he informed the debtor he would provide in connection with the case, such is likewise a violation of § 526(a)(1).  Of the forty-four cases assigned to this Court in which the UST filed the sanctions motion, this Court has determined the following:

| | |
|---|---|
| Violation of Rule 1007 and § 521: | 20 cases |
| 2016(b) disclosure was misleading: | 31 cases |
| 2016(b) disclosure was inconsistent: | 31 cases |
| Conflict of interest in fee agreement: | 23 cases |

The UST has established a clear pattern and practice of violating § 526.  *See In re Hanawahine*, 577 B.R. 573, 580 (Bankr. D. Haw. 2017) (a pattern and practice was established by the fact that bankruptcy courts in three other jurisdictions had sanctioned the bankruptcy firm and/or its principal for abandoning debtors, and a motion was pending in a fourth jurisdiction.)  Such violation exposes Youngblood to both injunctive and civil penalties.

B.  *The Court's Inherent Powers*

The Supreme Court has made it clear that an Article III federal court has the inherent power "to control admission to this bar and to discipline attorneys who appear before it." *Chambers v. NASCO, Inc.,* 501 U.S. 32, 43 (1991).  The Ninth Circuit

MEMORANDUM OF DECISION — 15

recognizes that bankruptcy courts also "have the inherent power to sanction

that *Chambers* recognized exists within Article III courts." *Caldwell v. Unified Cap.*

*Corp.* (*In re Rainbow Mag., Inc.*), 77 F.3d 278, 284 (9th Cir. 1996); *see also In re*

*Aleman*, No. 14-00606-TLM, 2015 WL 1956271, at *1–2 (Bankr. D. Idaho Apr. 29,

2015); *In re Hurd,* 2010 WL 3190752, at *2 (Bankr. D. Idaho Aug. 11, 2010) ("A

bankruptcy court has the authority to regulate the practice of lawyers who appear before

it.  Such authority stems from the court's inherent powers, the Code and the Rules.");

*Gardner v. Law Office of Lyndon B. Steimel (In re Valentine),* 2014 WL 1347229, at * 3

(Bankr. D. Idaho Apr. 3, 2014) ("The BAP recognized that, under Ninth Circuit

precedent, the bankruptcy courts have the power to sanction under their civil contempt

authority under § 105(a) and under their inherent sanction authority." (internal quotations

omitted)).

 These inherent powers are not without limits, however.  "Because of their

potency, inherent powers must be exercised with restraint and discretion." *Chambers*,

501 U.S. at 44.  Thus, like the bankruptcy court's civil contempt authority, inherent

sanction authority "does not authorize significant punitive damages." *Knupfer v.*

*Lindblade (In re Dyer),* 322 F.3d 1178, 1197 (9th Cir. 2003) (noting that the Ninth

Circuit has "refrained from authorizing a punitive damage award under the bankruptcy

court's inherent sanction authority").  "Civil penalties must either be compensatory or

designed to coerce compliance." *Dyer,* 322 F.2d at 1192 (citing *F.J. Hanshaw Enters.,*

*Inc. v. Emerald River Dev., Inc.,* 244 F.3d 1128, 1137–38 (9th Cir. 2001)).

 When there is bad-faith conduct in the course of litigation that could be adequately

MEMORANDUM OF DECISION — 16

sanctioned under the Rules, the court ordinarily should rely on the Rules rather than the

inherent power. But if in the informed discretion of the court, neither the statute nor the

Rules are up to the task, the court may safely rely on its inherent power. *Chambers*, 501

U.S. at 50.

### C. *Injunctive Relief Sought*

Initially, the Court notes that it is possible Youngblood no longer intends to

practice law. He indicated at the hearing on this motion that he was unable to represent

the Debtor and asked to withdraw from the cases in which the sanctions motions had

been filed. Moreover, since the hearing, the Court has been informed that Youngblood

has not paid his annual bar dues, and on March 14, 2022, the Idaho Bar Association

suspended him from the practice of law. As a result, this Court issued a reciprocal notice

of suspension and turned off Youngblood's electronic filing privileges. Nevertheless,

operating on the assumption that Youngblood will one day return to practicing law, the

Court will consider the UST's request for injunctive sanctions.

In the motion, the UST seeks several forms of injunctive relief. The Court will

consider each. First, the UST requests suspension of Youngblood's practice before this

Court until the Court is satisfied that the issues raised in the pending motion have been

corrected. At present this is moot, as Youngblood currently has no filing privileges.

Next, the UST seeks to require Youngblood to file a "status report" or other

document with the Court in each case where he appears as counsel, for as long as the

Court deems necessary. This report is intended to provide guard rails to channel

Youngblood's practice to conform with the Code, Rules, and Idaho Rules of Professional

MEMORANDUM OF DECISION — 17

Conduct.  Specifically, the UST envisions this report to include what is essentially an

affidavit of the debtor bearing a wet signature as well as a certification by Youngblood

indicating:

> 1)  that Youngblood personally met and reviewed the Petition, Schedules, Statement of Financial Affairs, and other documents with the debtor prior to filing;
>
> 2)  that the debtor has had his or her questions answered and is satisfied with Youngblood's representation; and
>
> 3)  that the debtor has provided, and Youngblood will retain, copies of the wet signatures filed in the case.

The Court concludes most of these provisions are appropriate.  The requirement to

retain the debtors' wet signatures in all cases not only complies with what is required of

an attorney filing electronically, but will ensure Youngblood obtains and files wet

signatures for the debtors in their respective cases.  Moreover, a statement from both

Youngblood and his clients that Youngblood has met with the client and reviewed all

important documents prior to filing will serve to align his new practice with his legal and

ethical obligations.

Next, while the UST's request for a statement from the debtor that his or her

questions have been answered and he or she is satisfied with Youngblood's

representation is well-meaning, the Court does not find it appropriate.  Instead, the Court

will order that the client provide a statement that he or she has had a reasonable

opportunity to converse with Youngblood and to ask questions, and that Youngblood has

responded to those questions.  The Court will not require that every client be "satisfied"

with Youngblood's representation, however.  The Court understands that client

MEMORANDUM OF DECISION — 18

satisfaction is dependent on many different factors, and that counsel may be doing an

excellent job and complying with all statutes, Rules, and ethical obligations, yet the client

could remain unsatisfied for some reason.  Thus, the Court will not order this relief.

   *D.  Civil Penalty*

   Finally, the UST asks that the Court impose a civil penalty pursuant to

§ 526(c)(5)(B)[5] to deter him from making untrue and misleading statements and

representations in the future.  While § 526(c)(5)(B) permits the imposition of a civil

penalty where a pattern and practice of violations has occurred, the Court declines the

UST's invitation here.

   A civil penalty must be appropriate in amount and intended to deter violative

conduct in the future.  *In re Hanawahine*, 577 B.R. at 580 (citing *In re Huffman*, 505 B.R.

726, 766 (Bankr. S.D. Miss. 2014)); *In re Dellutri L. Grp.*, 482 B.R. 642, 653–54 (Bankr.

M.D. Fla. 2012) (citing *McComb v. Jacksonville Paper Co.,* 336 U.S. 187, 191, 69 S. Ct.

497, 499, 93 L. Ed. 599 (1949) (a civil sanction is "remedial in nature and intended to

enforce compliance.")).  While the UST has established a clear and consistent pattern of

violations on Youngblood's part, the Court finds a civil penalty unnecessary as a

deterrent.  By this decision and the corresponding order, the Court will require both

disgorgement of the fees paid in this case as well as significant record keeping and

reporting requirements in future cases.  These measures are designed to curtail

---

[5] This statute provides, "if the court, on its own motion or on the motion of the United States trustee or
the debtor, finds that a person intentionally violated this section, or engaged in a clear and consistent
pattern or practice of violating this section, the court may … (B) impose an appropriate civil penalty
against such person."

MEMORANDUM OF DECISION — 19

Youngblood's cavalier approach to the practice of law and ensure that his future practice conforms to applicable statutes, Rules, and ethical obligations.  As such, an additional deterrent in the form of a civil penalty is unwarranted here.

### *Conclusion*

Finding merit in some of the allegations raised in the UST's motion for sanctions, the Court will 1) cancel the attorney/client contract between Youngblood and the Debtor; 2) order disgorgement of the $1,510 in fees Debtor paid to Youngblood for his services in this case, and 3) impose injunctive relief as follows:  should Youngblood return to the practice of law, he will have to obtain, file, and retain each debtor's wet signatures in accordance with the requirements of the Code, Rules, Local Rules, and the Court's ECF Procedures; he will have to file a statement bearing a wet signature from the client, attesting that Youngblood has met with the client and reviewed all important documents prior to filing; and finally, that the client has had a reasonable opportunity to converse with Youngblood and to ask questions, and that Youngblood has responded to those questions.  The Court will not find that the bifurcated fee is unreasonable on the evidence presented, nor will it impose a civil penalty.

A separate order will be entered.

DATED:  May 4, 2022

_____
JOSEPH M. MEIER
CHIEF U. S. BANKRUPTCY JUDGE

MEMORANDUM OF DECISION — 20